**TY KIRKPATRICK**
PRO SE
1455 Sardine Creek Road
Gold Hill, OR 97525
(541) 292-3044
tkhopewithhim@gmail.com

```
                              FILED

                           Jun 10 2020

                    CLERK, U.S. DISTRICT COURT
                  SOUTHERN DISTRICT OF CALIFORNIA
                  BY      s/ vanessac         DEPUTY
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TY KIRKPATRICK, <br><br> *Plaintiff,* <br><br> vs. <br><br> TIMOTHY HUBMAN and COEXIST FOUNDATION, <br><br> *Defendants.* | Case No.:  **'20 CV1063 GPC DEB** <br><br> **VERIFIED COMPLAINT FOR:** <br><br> **1. BREACH OF CONTRACT;** <br> **2. UNJUST ENRICHMENT; and** <br> **3. FRAUDULENT MISREPRESENTATION** |

NOW COMES THE PLAINTIFF TY KIRKPATRICK, appearing pro se, alleging

against DEFENDANTS TIMOTHY HUBMAN and COEXIST FOUNDATION, INC., as

follows:

## INTRODUCTION

1.    Ilie Jurca ("Ilie Jurca") and Victoria Jurca ("Victoria Jurca"), based on many false

representations and inducements as made by Timothy Hubman ("Hubman"), advanced several

loans to Hubman and his alleged "foundation" Coexist Foundation, Inc. ("Coexist").

2.    Hubman and Coexist has defaulted on each and every loan advanced to them.

1

3.      Ilie Jurca and Victoria Jurca sold their interest and assigned their rights in the loans they initially made and the promises made by Hubman and Coexist to them to Plaintiff Ty Kirkpatrick ("Kirkpatrick") in mid-2019.

4.      Kirkpatrick now brings this action seeking relief under two breach of contract counts, an unjust enrichment count, and a fraudulent misrepresentation count.

5.      As established herein, Hubman and Coexist clearly have breached the agreements established between them and Ilie Jurca and Victoria Jurca.

6.      Additionally, the actions of Hubman and Coexist in inducing Ilie Jurca and Victoria Jurca to continuously make loans to them were fraudulent in nature as Hubman time and time again made false representations to Ilie Jurca, Victoria Jurca, and Kirkpatrick.

## JURISDICTION AND VENUE

7.      In this action, federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff Kirkpatrick is an Oregon resident, while Defendant Hubman, upon information and belief, is either a Florida or California resident, and Defendant Coexist is a Florida organized corporation with its principal place of business in Florida. Accordingly, complete diversity of citizenship exists. Also, the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      While federal jurisdiction is proper, the appropriate choice of law to be applied herein is California state law as the matters to be evaluated are questions of state law and not federal law, and a portion of the subject contracts that have been breached by Defendants state that the contracts are to be governed and construed consistent with the laws of the state of California.

9.      Venue in the Southern District of California is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events which the claims asserted herein are based occurred in this District and the subject contracts were executed in the District.

**STATEMENT OF FACTS**

10.     In late 2008, Hubman and Kirkpatrick were introduced by mutual acquaintances to Pastor Ilie Jurca. The meeting took place at the church in which Ilie Jurca was pastor and Hubman and Kirkpatrick, after hearing much about Ilie Jurca, were interested in joining the church. Shortly thereafter, both Hubman and Kirkpatrick did join the church in which Ilie Jurca was pastor.

11.     In April of 2010 Hubman represented to Ilie Jurca and Kirkpatrick that a client of his was supposed to make a donation to his alleged "non-profit foundation" Coexist. Hubman explained that the client chose not to make the donation and the result was that Hubman had to come up with $50,000 immediately or he was to suffer a $75,000 penalty. When questioned for further detail, Hubman was unable to provide any, but stressed the importance of receiving the $50,000 immediately. *See Plaintiff's Exhibit 1: Affidavit of Ty Kirkpatrick and Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

12.     Ilie Jurca, a Romanian immigrant who came to the United States with nothing more than the clothes on his back and worked extremely hard to carve out a living for himself and his family before realizing his true call as a pastor, has always sought to help anyone in the church when he has a chance to do so. Accordingly, Ilie Jurca arranged for a $50,000 loan for Hubman and Coexist. The funds were given to Ilie Jurca by his brother Samuel Jurca, and then Ilie Jurca made the short term loan to Hubman and Coexist on April 6, 2010. The loan was memorialized by a promissory note as agreed upon and executed by Hubman and Coexist, as the

borrowers, and Ilie Jurca, as the lender. *See Plaintiff's Exhibit 3: $50,000 Note and Plaintiff's Exhibit 4: $50,000 Transfer Confirmation.*

13.    Hubman and Coexist failed to re-pay the loan; not by the maturity date detailed in the promissory note, nor as of the date of this filing.

14.    Hubman and Ilie Jurca then began discussions for Hubman and Coexist to at least start making monthly payments to Ilie Jurca, which he could in turn begin to pay Samuel Jurca back with. It was agreed that Hubman would pay $416.97 per month. Hubman missed the first payment. *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

15.    Kirkpatrick then, beginning with July 2010 and through November 2011, paid the $416.97 monthly payment to Ilie Jurca so Ilie Jurca would at least have some relief from his brother Samuel Jurca who was constantly and consistently seeking payment, and rightfully so.

16.    In late 2010, Hubman approached Ilie Jurca and informed him that he had a way to re-pay Ilie Jurca and his brother. Hubman informs Ilie Jurca that he and Coexist are owed $2,000,000 from one Michael Fehrenbacher, and the $2,000,000 is being held in escrow at a title company called United Title. *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

17.    Hubman tells Ilie Jurca that he just needs some funds to retain the lawyer that may be necessary to free up the $2,000,000 and living expenses until he receives the $2,000,000.

18.    It is at this point that Hubman begins a string of calls and emails to Ilie Jurca and Kirkpatrick informing them of the progress being made in the case Hubman is involved in that will get Hubman back $2,000,000 of "his" money "imminently." This string of calls and emails involves correspondence from Hubman's Florida counsel, and continues for years as Hubman continues to milk money from Ilie Jurca and even the church (any funds lent from the church to Hubman, or in one instance, stolen from the church by Hubman, are not the subject of this

litigation) based on half-truths and outright lies from Hubman. *See Plaintiff's Exhibit 5: Sampling of Emails from Hubman Associated with the Lawsuit.*

19.    Thereafter, beginning in December of 2010, based on the misrepresentations of Hubman, as alluded to above and many others, Ilie Jurca makes the following loans to Hubman and Coexist: (i) $100,000 on December 16, 2010; (ii) $30,000 on December 21, 2010; (iii) $30,000 on January 5, 2011; (iv) $6,000 on February 16, 2011; and (v) $11,200 on December 5, 2011. *See Plaintiff's Exhibit 6: 2010 and 2011 Transfer Confirmations.*

20.    Hubman continuously assured Ilie Jurca each time that he would only need the loans for 60 days as within that time it was anticipated that he would receive the $2,000,000 owed to "him" and Coexist. Ilie Jurca, unaware of how the process would work to release the funds and unaware of how lengthy a process litigation in general can be, made the loans to Hubman and Coexist each time for 60 days. *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

21.    Ilie Jurca did not charge Hubman any interest on the loans made. In what was represented by Hubman as a show of appreciation (in hindsight what was clearly more lies to further induce Ilie Jurca into making additional loans from himself personally and from the church) for all of Ilie Jurca's help, Hubman promised Ilie Jurca to not only pay all he had loaned him back, but also made several other promises to Ilie Jurca in consideration for all he had done, namely: (i) to pay more than Ilie Jurca had sent him, by way of example, re-pay $175,000 for the $160,000 Ilie Jurca had send Hubman in December 2010 and January 2011 and (ii) to pay an additional $388,000 which would pay off mortgages Ilie Jurca held on two of his properties. Hubman memorialized all these promises in his own handwritten notes and provided them to Ilie Jurca and Kirkpatrick. *See Plaintiff's Exhibit 7: Hubman's Additional Handwritten Promises.*

22.     To further memorialize and evidence the promises made by Hubman to Ilie Jurca, additional promissory notes in the amounts of $270,000 and $388,000 were entered into on December 15, 2010 by and between Coexist, as the borrower, and Ilie Jurca, as the lender. The notes state that the associated debt is secured by and collateralized by the funds held with United Title that Hubman and Coexist claimed were owed to them. *See Plaintiff's Exhibit 8: $270,000 and $388,000 Notes.*

23.     On July 23, 2012, Hubman and Coexist, both as borrower, and Ilie Jurca, as lender, entered into a new promissory note in the amount of $692,000 that encapsulated the aforementioned loans made by Ilie Jurca and promises made by Hubman and Coexist, and also incorporated two new loans that were made by Ilie Jurca to Hubman and Coexist, which were $24,000 on August 3, 2011 and $10,000 on July 18, 2012. *See Plaintiff's Exhibit 9: $692,000 Note.*

24.     In February of 2014, while Hubman was living in Ilie Jurca's home in Tustin, California without paying rent he agreed that he would pay, Hubman approached Ilie Jurca and told him that while the lawsuit to get "his" $2,000,000 back was taking longer than anticipated, if he could just get $20,000 he could begin online options trading and the proceeds from that would allow him to begin making payments towards all the debts he owed Ilie Jurca. *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

25.     On February 24, 2014, Ilie Jurca received $20,000 from his aunt and lent those funds to Hubman, as he no longer had any of his own funds available to again lend to Hubman as he had even used his retirement money to help Hubman.  The loan was memorialized in a promissory note establishing re-payment without any interest with Ilie Jurca as the lender and

CC4AP.org LLC, another entity solely owned by Hubman, as the borrower.  *See Plaintiff's Exhibit 10: $20,000 Note and Transfer Confirmation.*

26.    Within 3 days of receiving the money, Hubman informed Ilie Jurca that he had lost the $20,000 trading, did make enough to pay Ilie Jurca the rent owed to him, paid him that, and left with the car Ilie Jurca had lent him previously.  *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

27.    After leaving Ilie Jurca's home, Ilie Jurca and Hubman did maintain contact through the church and otherwise.  Ilie Jurca and Kirkpatrick implored Hubman many times to make some type of payment towards all that he owed Ilie Jurca.  Hubman did make a payment to Ilie Jurca on April 9, 2014 in the amount of $1,930.  *See Plaintiff's Exhibit 11: April 9, 2014 Check.*

28.    Hubman consistently maintained that he could not pay anything more until he *received the money owed to "him" from the ongoing lawsuit that was taking years longer to* come to fruition than Hubman initially represented.

29.    Ilie Jurca, Kirkpatrick, and Hubman continued to talk in the forthcoming years regarding church matters but also regarding the lawsuit, until August of 2016, when Hubman informed Ilie Jurca that he finally had obtained a judgment in his pending lawsuit and received judgment in the amount of approximately $700,000.  *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order.*

30.    Ilie Jurca assumed this meant that he would get all the money owed to him; however, it did not.  To date, Hubman, as far as Ilie Jurca and Kirkpatrick know, has not collected anything under the aforementioned judgment.

31.    Ilie Jurca and Kirkpatrick continued to ask Hubman to at least make some kind of

payments on all that was owed.  To this end, Ilie Jurca and Hubman entered into three promissory notes on January 10, 2019, evidencing a portion of what Hubman owed, and to encourage Hubman to make some form of regularized structured payments on all that was owed. *See Plaintiff's Exhibit 13: $175,000, $50,000, and $20,000 Notes.*

32.     The three promissory notes, in which Ilie Jurca and his wife Victoria Jurca were the lenders and Hubman was the borrower, were in the principal amounts of $175,000, $50,000, and $20,000 and required weekly principal payments without interest.  *See Plaintiff's Exhibit 13: $175,000, $50,000, and $20,000 Notes.*

33.     Hubman did begin to make weekly payments thereafter in the amount of $250. Hubman discussed being able to pay much more than this each week and each month, but he never did so.  *See Plaintiff's Exhibit 14: Ilie Jurca's 2019 and 2020 Payment Record.*

34.     Ilie Jurca and Hubman did agree that if Hubman was only able to pay $250 each week, then all the funds paid would be credited towards the $20,000 note, which would pay off Ilie Jurca's aunt.  *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

35.     Shortly thereafter, Ilie Jurca and Kirkpatrick learned of the details associated with the judgment Hubman and Coexist received in August of 2016.  Ilie Jurca and Kirkpatrick were surprised to learn that the $2,000,000 that Hubman had been saying for years was owed to him were actually funds that were owed to a man named Shannon Stewart ("Stewart").  Stewart, who initially met Hubman through Kirkpatrick, was actually the owner of the subject $2,000,000 and when the associated transaction never came to fruition, the funds were supposed to be directed back to Stewart, not Coexist or Hubman.  *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order.*

36.     Coexist, while only supposed to maintain the funds from Stewart in escrow, invested the funds with one Michael Fehrenbacher, and the lawsuit that transpired, which Hubman spoke of so many times to Ilie Jurca and Kirkpatrick, sought to have these funds returned, not for the benefit of Hubman or Coexist, but for Stewart. *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order.*

37.     Ilie Jurca and Kirkpatrick were also very surprised to learn that Fehrenbacher did return $1,494,250 to Coexist and Hubman, to which Hubman did not return to Stewart, who the funds actually originated from, nor did he tender any of those funds to Ilie Jurca, who he pledged the funds to. *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order.*

38.     Ilie Jurca and Kirkpatrick, now doing some additional research, learned of several other occasions in which Hubman had participated in similar schemes, not only before, but also after joining the church.

39.     In September of 2019, Ilie Jurca, frustrated that Hubman was only paying a fraction of what he was supposed to and disgusted with all the lies that Hubman told him concerning the lawsuit, began discussions with Kirkpatrick for Kirkpatrick to purchase the debt owed by Hubman and Coexist to Ilie Jurca and Victoria Jurca and all the associated promises made by Hubman and Coexist to Ilie Jurca and Victoria Jurca.

40.     On September 27, 2019, Ilie Jurca and Victoria Jurca entered into an Assignment Agreement ("Assignment") with Kirkpatrick that assigned all of Ilie Jurca and Victoria Jurca's *right, title, and interest in any and all promissory notes from Hubman and Coexist to Ilie Jurca and Victoria Jurca,* any and all loans received by Hubman or Coexist from Ilie Jurca and Victoria Jurca, and any and all promises made by Hubman or Coexist to induce Ilie Jurca and Victoria Jurca to advance these funds. Excluded from the Assignment was the $20,000 Note which had

to be paid back to Ilie Jurca's aunt, which Ilie Jurca could not assign.  In consideration for the assignment that was made, Kirkpatrick tendered $95,743.27 to Ilie Jurca and Victoria Jurca and made additional monthly payments as further detailed in the Partnership Agreement between Ilie Jurca, Victoria Jurca, and Kirkpatrick.  *See Plaintiff's Exhibit 15: September 27, 2019 Assignment and Partnership Agreement with According Check.*

41.    On April 8, 2020, Hubman informed Ilie Jurca that he was unable to make any additional payments.  *See Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*  As of that date, Hubman had made $250 weekly payments that totaled $16,250.  Hubman has not made any additional payments of any amount since that time.  *See Plaintiff's Exhibit 14: Ilie Jurca's 2019 and 2020 Payment Record.*

42.    On May 18, 2020, Kirkpatrick, consistent with the rights granted to him in the Assignment, provided Hubman and Coexist notice via email and certified mail that they were in default in the amount of $740,700 as it pertained to the loans originally made by Ilie Jurca and Victoria Jurca and promised inducements originally made by Hubman and Coexist to Ilie Jurca and Victoria Jurca, all of which Kirkpatrick is now the holder and owner of.  The Notice gave Hubman and Coexist 10 days to cure the default.  *See Plaintiff's Exhibit 16: May 18, 2020 Default Notice.*

43.    Since the date of the above referenced notice, and to and through the date of this filing, Hubman or Coexist have made no payment of any type of any amount.

## COUNT ONE: BREACH OF CONTRACT AGAINST HUBMAN AND COEXIST AS IT PERTAINS TO THE PRE-2019 PROMISSORY NOTES

44.    Plaintiff Kirkpatrick restates and realleges Paragraphs 1 through 43 of the Complaint as if fully stated herein.

45.     Under California law, the elements of a breach of contract cause of action are: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." *Thrifty Payless, Inc. v. The Americana at Brand, LLC, 218 Cal.App 4th 1230, 1244 (2013).*

46.     A valid contract clearly exists in the Promissory Notes/Irrevocable Letters of Direction as entered into and executed by Hubman and Coexist. The total amount owed by Hubman and Coexist pursuant to the Promissory Notes/Irrevocable Letters of Direction is $742,000, which has been calculated to ensure no duplication as later promissory notes were entered into, and such later promissory notes have not been contemplated in this figure.

47.     Ilie Jurca and Victoria Jurca, and their now successor in interest Plaintiff Kirkpatrick, performed all their obligations under the Promissory Notes/Irrevocable Letters of Direction by loaning the funds they were required to loan to Hubman and Coexist in consideration for the promises made by Hubman and Coexist as memorialized in the Promissory Notes/Irrevocable Letters of Direction.

48.     Hubman and Coexist have breached the Promissory Notes/Irrevocable Letters of Direction by not fulfilling the promises they reflect. Namely, when Hubman and Coexist received funds from Fehrenbacher associated with Hubman and Coexist's pending lawsuit against Fehrenbacher, as confirmed by the August 2, 2016 Judgment and Order entered in the case, Hubman and Coexist did not pay funds to Ilie Jurca, as the explicit language of the Promissory Note/Irrevocable Letters of Direction provide. *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order.* Hubman and Coexist did not pay Ilie Jurca back the principal of the loan he had made to Hubman and Coexist. Hubman and Coexist did not pay Ilie Jurca back anything, after receiving over $1,400,000 from Fehrenbacher.

49.     As a result of Hubman and Coexist's breach, Ilie Jurca and Victoria Jurca, and their now successor in interest Plaintiff Kirkpatrick, have been damaged as they have been deprived from the promises made by Hubman and Coexist to them, which induced them to make the loans they did for Hubman and Coexist.

50.     The promises made by Hubman and Coexist, as evidenced by the aforementioned Promissory Notes/Irrevocable Letters of Direction, total $742,000. Hubman did make a payment to Ilie Jurca in April of 2014 in the amount of $1,930, so the according balance remaining is $740,070.

51.     Accordingly, under this Count, Plaintiff Kirkpatrick seeks judgment against Hubman and Coexist for $740,070.

**COUNT TWO: BREACH OF CONTRACT AGAINST HUBMAN AS IT PERTAINS TO THE 2019 PROMISSORY NOTES**

52.     Plaintiff Kirkpatrick restates and realleges Paragraphs 1 through 51 of the Complaint as if fully stated herein.

53.     In addition to the Promissory Notes referenced in Count One above, Hubman also entered into three Promissory Notes in 2019 totaling a principal amount owed to Ile Jurca and Victoria Jurca of $245,000. The amount evidenced by these Promissory Notes is also included in the amount owed in Count One, and in the event the award in Count One is granted to Plaintiff Kirkpatrick, the amount owed under this Count Two should not be considered by this Court. Only in the event, for some reason, Plaintiff Kirkpatrick is not awarded damages as referenced in Count One, should the damages under this Count Two be considered.

54.     The Promissory Notes entered into in 2019 call for certain weekly payments of principal, without interest, to be made by Hubman. To date, Hubman has only made weekly

payments on the $20,000 Note, which is not involved in this litigation as it has not been assigned by Ilie Jurca and Victoria Jurca to Kirkpatrick, and has made no payments whatsoever on the $175,000 Note and $50,000 Note.

55.    Ilie Jurca and Victoria Jurca, and their now successor in interest Plaintiff Kirkpatrick, performed all their obligations under the Promissory Notes, as they lent the funds referenced in the Promissory Notes to Hubman.

56.    Hubman has breached the $175,000 Note and $50,000 Note by not making the weekly payments he was obligated to make consistent with the explicit terms of the $175,000 Note and $50,000 Note.

57.    As a result of Hubman's breach, Ilie Jurca and Victoria Jurca, and their now successor in interest Plaintiff Kirkpatrick, have been damaged as they have been deprived the $225,000 owed from the two Promissory Notes Hubman has breached the terms of.

58.    As alluded to above, Hubman did make a payment to Ilie Jurca in April of 2014 in the amount of $1,930, so the according balance remaining is $223,070.

59.    Accordingly, under this Count, Plaintiff Kirkpatrick seeks judgment against Hubman in the amount of $223,070.

**COUNT THREE: UNJUST ENRICHMENT AGAINST HUBMAN AND COEXIST**

60.    Plaintiff Kirkpatrick restates and realleges Paragraphs 1 through 59 of the Complaint as if fully stated herein.

61.    Pursuant to California law, the elements of an unjust enrichment claim are: (1) the receipt of a benefit and (2) the unjust retention of the benefit at the expense of another. *Peterson v. Cellco Partnership*, 164 Cal.App. 4th 1583 (2008).

62.    Hubman and Coexist clearly derived a benefit from Ilie Jurca and Victoria Jurca as they transferred $227,200 (not including the $20,000 transferred in February 2014 which is not a part of this action) to them based upon the misrepresentations, associated with the lawsuit against Fehrenbacher and otherwise, made by Hubman. *See Plaintiff's Exhibit 4: $50,000 Transfer Confirmation and Plaintiff's Exhibit 6: 2010 and 2011 Transfer Confirmations.*

63.    Hubman and Coexist have unjustly retained these funds to the detriment and loss of Ilie Jurca and Victoria Jurca, and their now successor in interest Plaintiff Kirkpatrick.

64.    Justice and fairness calls for at least these funds transferred to Hubman and Coexist to be returned.

65.    Accordingly, and as an alternative remedy to the awards sought in Counts One and Two herein, if this Court were to deem it appropriate, under this Count, Plaintiff Kirkpatrick seeks judgment against Hubman and Coexist in the amount of $225,270, which represents the $227,200 Ilie Jurca and Victoria Jurca transferred to Hubman and Coexist less the $1,930 Hubman paid to Ilie Jurca in April 2014.

**COUNT FOUR: FRAUDULENT MISREPRESENTATION AGAINST HUBMAN AND COEXIST**

66.    Plaintiff Kirkpatrick restates and realleges Paragraphs 1 through 65 of the Complaint as if fully stated herein.

67.    Under California law, "the elements of a fraud cause of action are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Lazar v. Superior Court 12 Cal.4th 631, 638 (1996).*

68.    Hubman, individually and in his capacity as a representative of Coexist, made many intentionally false representation to Ilie Jurca and Kirkpatrick, dating back to the first $50,000 loan Ilie Jurca arranged for Hubman. It is likely that the situation associated with why Hubman desperately needed $50,000 was fabricated but Plaintiff Kirkpatrick cannot prove that at this time. It is also likely that Hubman lied to Ilie Jurca in 2014 when he sought $20,000 to trade with. *Trading likely never took place as somehow the $20,000 lent to Hubman was gone within a matter of days.*

69.    However, the fraud associated with this Count, centers around the lies Hubman told Ilie Jurca and Kirkpatrick about the ongoing lawsuit, which was the main reason that Ilie Jurca and Victoria Jurca continued to lend Hubman and Coexist money time and time again.

70.    It is clear that through entering into the Irrevocable Letters of Direction and from the many emails Hubman sent to Ilie Jurca and Kirkpatrick, Hubman was representing to Ilie Jurca and Kirkpatrick that: *(i) the subject $2,000,000 was held in escrow with United Title; (ii)* Hubman and Coexist had not had any funds returned to him yet from Fehrenbacher or United Title; and *(iii)* these funds were validly owed to Hubman and Coexist from Fehrenbacher and United Title and they would be forthcoming soon. *See Plaintiff's Exhibit 5: Sampling of Emails from Hubman Associated with the Lawsuit.*

71.    All of the above statements are absolutely false and were used to induce Ilie Jurca and Victoria Jurca to continue to loan funds to Hubman and Coexist believing that a big pay day *would be forthcoming for Hubman and Coexist that would allow Hubman and Coexist to fulfill* all the promises they were making to Ilie Jurca. However, that pay day never came, and as was revealed by the Northern District of Illinois Court hearing the lawsuit, that pay day could not have come.

72.     The Northern District of Illinois Court found that: (i) Coexist and Hubman had wire transferred the $2,000,000 to Fehrenbacher and MWF Financial, an entity Fehrenbacher owns, and not United Title, as also supported by the bank statements Hubman provided in the case; (ii) Fehrenbacher had paid Hubman and Coexist $1,494,250, which Hubman concealed time and time again from Ilie Jurca and Kirkpatrick; and (iii) the funds that were owed by Fehrenbacher were not owed to Hubman or Coexist, but to Stewart. *See Plaintiff's Exhibit 12: August 2, 2016 Judgment and Order and Plaintiff's Exhibit 17: Hubman Provided Bank Statements Exhibiting Transfers to MWF Financial.*  When Hubman stated to Ilie Jurca and Kirkpatrick that "his" $2,000,000 is in escrow with United Title, that was a lie, as Hubman never even sent the funds to United Title.  Furthermore, even if Hubman were to have gotten additional funds from Fehrenbacher, he could never have fulfilled all the many promises made to Ilie Jurca and Victoria Jurca, let alone re-pay them, as the funds received would have to go to Stewart. *See Plaintiff's Exhibit 1: Affidavit of Ty Kirkpatrick and Plaintiff's Exhibit 2: Affidavit of Ilie Jurca.*

73.     Hubman and Coexist's actions as referenced above, clearly constitute misrepresentations and concealments that Hubman knew were false.  He spoke, or withheld, these falsities with the intent to induce Ilie Jurca and Victoria Jurca to continue to loan him and Coexist funds.  Ilie Jurca and Victoria Jurca justifiably relied on these misrepresentations as they continued to make loans, and they have been damaged by not having the promises fulfilled that induced them to make these loans, or even receive their principal loan amounts back.

74.     In addition to the damages sought previously herein, Plaintiff Kirkpatrick now moves this Court seeking a judgment against Hubman and Coexist in an amount no less than five times the actual damage award determined as fair and appropriate by this Court.  Such an award is justified due to the intentional misrepresentations made by Hubman and Coexist that induced

Ilie Jurca and Victoria Jurca to make the many loans to Hubman and Coexist. Such clearly

tortious, fraudulent, intentional, and malicious conduct by Hubman and Coexist, as established

herein, warrants punitive damages, not to award Plaintiff Kirkpatrick, but to deter Hubman and

Coexist from continuing to engage in such similar conduct in the future and harming others.

## PRAYER FOR RELIEF

Wherefore, *Plaintiff Kirkpatrick* prays as follows:

1.      In conjunction with Count One, for judgment in favor of Plaintiff Kirkpatrick and

against Defendants Hubman and Coexist in the amount of $740,070;

2.      Alternatively, in conjunction with Count Two, for judgment in favor of Plaintiff

Kirkpatrick and against Defendant Hubman in the amount of $223,070;

3.      Alternatively, in conjunction with Count Three, for judgment in favor of Plaintiff

Kirkpatrick and against Defendants Hubman and Coexist in the amount of $225,270;

4.      *In conjunction with Count Four, and in addition to whatever is awarded in Counts*

One, Two, or Three, judgment in favor of Plaintiff Kirkpatrick and against Defendants Hubman

and Coexist, in an amount that is no less than five times the amount awarded in Counts One,

Two, or Three; and

5.      For such other relief as this Court deems fair and equitable.

## JURY DEMAND

Plaintiff Kirkpatrick does not demand a trial by jury in this action.

Dated: June ___, 2020

By: 

**TY KIRKPATRICK**
PRO SE
1455 Sardine Creek Road
Gold Hill, OR 97525
(541) 292-3044
tkhopewithhim@gmail.com

VERIFIED COMPLAINT

## VERIFICATION

I, Ty Kirkpatrick, Plaintiff in the present case, have personal knowledge of the facts set forth in the foregoing Verified Complaint, and I verify under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and recollection, the factual statements in this Verified Complaint are true and correct.

Dated: June _4th_, 2020

By: _____

**TY KIRKPATRICK**